McDOWELL MOTOR COMPANY, INC., v. NEW YORK UNDERWRITERS INSURANCE COMPANY, NEW YORK.

(Filed 28 February, 1951.)

**1. Insurance § 13a—**

While doubtful language in a policy must be construed in favor of insured and against insurer, and while the courts will adopt that construction favorable to insured when the policy is reasonably susceptible to two constructions, nevertheless the policy is a contract and is subject to the rules of interpretation applicable to written contracts generally, and must be construed to effectuate the intent of the parties as gathered from the language used.

**2. Same—**

In interpreting the language of an insurance policy to ascertain the intent of the parties, consideration may be given to the character of the business of the insured and the usual hazards involved therein.

**3. Same—**

Unambiguous terms in an insurance policy will be given their usual, ordinary and commonly accepted meaning.

**4. Insurance § 43b—Theft of car by prospective purchaser held within exclusion clause of dealer's theft policy sued on.**

The dealer's automobile theft policy in suit excluded liability in case insured voluntarily parted with title to or possession of any automobile covered thereunder, whether induced to do so by fraud, trick, device, false pretense, or otherwise. Insured's sales manager permitted a person representing himself to be a prospective purchaser to take an insured car in compliance with such person's request to be allowed to drive it to a place outside the city limits for his wife's inspection and approval or disapproval.

The manager had authority to permit prospective customers to take out cars for inspection. *Held:* The theft of the car by such person comes within the language of the exclusion clause of the policy, and insurer is not liable. Instances in which only the custodial possession is surrendered for the purpose of having the custodian perform some service to the car for the owner, distinguished.

APPEAL by plaintiff from *Halstead, Special Judge,* October Term, 1950, of PASQUOTANK.

Civil action to recover for the theft of an automobile.

The defendant, for a valuable consideration, issued to the plaintiff, the Ford dealer in Elizabeth City, a dealer's open policy of insurance, insuring automobiles owned by the plaintiff, among other things, against theft. The policy was in full force and effect at the time of the loss complained of, and the stolen car constituted a portion of the insured property with a replacement value of $1,588.63.

On 13 April, 1950, a prospective purchaser unknown to plaintiff, but who gave his name as Roberts, approached plaintiff's sales manager about the purchase of a two door, late model car. The plaintiff having no two door car, the sales manager undertook to interest him in the purchase of a slightly used four door 1949 Ford sedan. Whereupon the stranger expressed a desire to have his wife see the automobile before purchasing it, and stated he would bring her to plaintiff's place of business later that day. However, he did not return until about 10:30 the next morning, stating his wife was ill. He agreed to purchase the car for $1,850.00 if his wife approved. He then requested the sales manager to allow him to drive the car to the Bray Apartments on Weeksville Road, just outside Elizabeth City, for his wife's inspection and approval or disapproval. The prospective purchaser was permitted to drive the car away from plaintiff's premises under these circumstances, and neither he nor the car has been seen or heard from since.

The defendant denies liability for the theft of the automobile because of an exclusion clause contained in the plaintiff's policy, the pertinent part of which reads as follows: "Exclusions. Such policy does not cover: . . . loss suffered by the Insured in case he voluntarily parts with the title to or possession of any automobile at risk hereunder, whether or not induced so to do by any fraudulent scheme, trick, device, or false pretense or otherwise."

At the conclusion of plaintiff's evidence, defendant moved for judgment as of nonsuit. Motion allowed. Plaintiff excepted and appealed to the Supreme Court.

*McMullan & Aydlett for plaintiff.*
*Wilson & Wilson for defendant.*

DENNY, J.  The question for determination is whether or not the delivery of the automobile by plaintiff's sales manager to the prospective purchaser, under the above circumstances, was a voluntary parting with the possession thereof within the meaning of the exclusion clause contained in the plaintiff's policy of insurance.

This controversy hinges on the proper interpretation of the exclusion clause with respect to what constitutes a voluntary parting of possession as contemplated by the contracting parties.

The appellant argues that the language used in the exclusion clause is not clear since the word "possession" has many different meanings in legal terminology, citing *National Safe Deposit Co. v. Stead,* 232 U.S. 58, 58 L. Ed. 504, where it is said: "Both in common speech and in legal terminology, there is no word more ambiguous in its meaning than possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins. . . . Custody may be in the servant and possession in the master; or title and right of control may be in one and the property within the protection of the house of another." It is contended, therefore, that under our general rule when the meaning of language used in a policy of insurance is doubtful, it must be construed in favor of the insured and against the insurer.  *Williams v. Stone Co.,* 232 N.C. 88, 59 S.E. 2d 193; *Manning v. Insurance Co.,* 227 N.C. 251, 41 S.E. 2d 767; *Roberts v. Insurance Co.,* 212 N.C. 1, 192 S.E. 873, 113 A.L.R. 310; *Mills v. Insurance Co.,* 210 N.C. 439, 187 S.E. 581; *Jolley v. Insurance Co.,* 199 N.C. 269, 154 S.E. 400; *Allgood v. Insurance Co.,* 186 N.C. 415, 119 S.E. 561; *Underwood v. Insurance Co.,* 185 N.C. 538, 117 S.E. 790; *Crowell v. Insurance Co.,* 169 N.C. 35, 85 S.E. 37.

Likewise, where a policy of insurance is reasonably susceptible to two constructions, one favorable to the insured, the other to the insurer, the construction favorable to the insured will be adopted since the insurer chose the language contained in the policy.  *Electric Co. v. Insurance Co.,* 229 N.C. 518, 50 S.E. 2d 295; *Insurance Co. v. Harrison-Wright Co.,* 207 N.C. 661, 178 S.E. 235; *Underwood v. Insurance Co., supra.*

We recognize the soundness of these rules, but the rule is equally well settled that an insurance policy is only a contract and subject to the same rules of interpretation applicable to written contracts generally, and the intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts in the interpretation of such instruments.  *Kirkley v. Insurance Co.,* 232 N.C. 292, 59 S.E. 2d 629; *Electric Co. v. Insurance Co., supra; Bailey v. Insurance Co.,* 222 N.C. 716, 24 S.E. 2d 614; *Stanback v. Insurance Co.,* 220 N.C. 494, 17 S.E. 2d 666; *McCain v. Insurance Co.,* 190 N.C. 549, 130 S.E. 186.  In the case

of *Electric Co. v. Insurance Co., supra, Stacy, C. J.,* in speaking for the Court, on this question, said : "The heart of a contract is the intention of the parties which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Therefore, in the interpretation of language contained in an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties.

Insurance contracts will be construed according to the meaning of the terms which the parties have used and unless such terms are ambiguous, they will be interpreted according to their usual, ordinary, and commonly accepted meaning. *Bailey v. Insurance Co., supra; Stanback v. Insurance Co., supra; Roberts v. Insurance Co., supra; Gant v. Insurance Co.,* 197 N.C. 122, 147 S.E. 740; *Powers v. Insurance Co.,* 186 N.C. 336, 119 S.E. 481; *Crowell v. Insurance Co., supra; Penn v. Insurance Co.,* 158 N.C. 29, 73 S.E. 99.

It is conceded that plaintiff's sales manager had the authority to deliver the possession of the automobile in question to the prospective customer for the purpose of testing it or showing it to his wife for her approval or disapproval. And while it appears to be a practice with the plaintiff and some other dealers in the Elizabeth City area to permit prospective purchasers to test drive cars unaccompanied by a salesman or other representative of the owner, there is no evidence to support the view that the defendant was apprised of such practice and intended or agreed to insure the plaintiff against loss growing out of such practice. It becomes necessary, therefore, for us to say whether, in our opinion, delivery of the car to the prospective purchaser, a total stranger, for a purpose of his own, was a voluntary parting with possession within the meaning of the exclusion clause contained in the policy.

As a matter of course, the insurer would not be relieved from liability where the possession of a car covered by the policy was obtained from one not authorized to make a delivery thereof or where the car was taken under circumstances not implying consent on the part of the owner. *Botnick Motor Corporation v. Insurance Co.,* 300 N.Y.S. 1220, 253 N.Y. App. Div. 786; *Beene v. Southern Casualty Co.,* 168 La. 307, 121 So. 876; *Bankers and Shippers Insurance Co. v. Motor Co.* (Texas—Civ. App. 1937), 102 S.W. 2d 294; *Pratt v. Insurance Co.,* 50 R.I. 203, 146 A. 763.

And in our opinion the exclusion clause under consideration would not constitute a release of the insurer from liability for loss by theft where only the custodial possession of a car was surrendered for the purpose of having some service performed for the owner by the custodian, such as washing, greasing, storing, repairing, etc. Blashfield's Cyclopedia of

Law and Practice, Vol. VI, sec. 3717; *Bennett Chevrolet Co. v. Insurance Co.*, 58 R.I. 16, 190 A. 863, 109 A.L.R. 1077; *Gibson v. Insurance Co.*, 117 W. Va. 156, 184 S.E. 562; *National Mut. Casualty Co. v. Cypret*, 207 Ark. 11, 179 S.W. 2d 161; *Beene v. Southern Casualty Co., supra; Allen v. Insurance Co.*, 105 Vt. 471, 168 A. 698, 89 A.L.R. 460.

On the other hand, we think the exclusion clause does relieve the insurer from liability for theft where the possession of the car was voluntarily surrendered to another with the right to exercise control thereof for a purpose of his own. *Bennett Chevrolet Co. v. Insurance Co., supra; Boyd v. Insurance Co.*, 147 Neb. 237, 22 N.W. 2d 700; *Stuart Motor Co. v. General Exchange Insurance Corporation* (Texas—Civ. App. 1931), 43 S.W. 2d 647.

A contrary conclusion, however, was reached in passing upon a factual situation similar to that before us and involving the identical exclusion clause, in *McConnell v. Insurance Co.* (USCA 5th Circuit), 178 F. 2d 76, and in *Tripp v. Insurance Co.*, 141 Kan. 897, 44 P. 2d 236.

Even so, in our opinion, the exclusion clause was made a part of the plaintiff's policy for the very purpose of relieving the insurer from liability for theft in those instances where the insured voluntarily parts with the possession of an automobile covered by the policy under such circumstances as those disclosed on this record.

We have carefully considered the facts and circumstances under which the plaintiff parted with the possession of its automobile, and the authorities cited herein, and in our opinion it voluntarily parted with the possession of the insured car within the meaning of the exclusion clause contained in its policy.

The judgment as of nonsuit entered below is
Affirmed.